AVERY and another *v.* WILSON.

(*Circuit Court, W. D. North Carolina.* June Term, 1884.)

1. PATENTS FOR INVENTIONS—REMEDIES—CONCURRENCE OF EQUITY AND LAW.
    In cases of patent infringement the statutes of the United States have conferred original and concurrent jurisdiction upon courts of equity, and they may determine, without the assistance of courts of law, the legal rights of the plaintiff and the infringement of the defendant, and may ascertain the amount of loss and damage by taking an account of the defendant's profits, and afford a complete remedy for the wrong committed, and prevent its continuance by injunction.

2. SAME—LUNACY OF INFRINGER—ACCOUNT—INJUNCTION—COSTS.
    The defendant having admitted the infringement, but pleaded the fact of his lunacy at the time of the commission of it, the court decrees a perpetual injunc-

tion on account of the profits obtained by the defendant through the infringement, as well as costs in favor of the plaintiff.

3. SAME—MAINTENANCE OF LUNATIC.

Equity's superintendence and care is only exercised during the period of mental incapacity, when the lunatic is unable to provide maintenance for himself and family. After the restoration of such person to a condition of sanity, the courts cannot properly allow the expense of past maintenance, although his incapacity for self-support and the incidental expenses necessarily incurred during the lunacy had greatly diminished his estate, and the damages claimed were caused by him while he was a lunatic. An account ordered as to such damage cannot take the past maintenance of the lunatic into consideration, after the establishment of his sanity.

4. SAME — EQUITY — COSTS IN INTERMEDIATE PROCEEDINGS — DISCRETION OF COURTS.

Courts of equity having a large discretion in matter of costs, frequently give costs in intermediate stages of a cause, without waiting for a final decree.

In Equity.

*Jones & Johnston*, for plaintiff.

*Jos. H. Wilson & Son*, for defendant.

DICK, J.   This cause was set for hearing at this term by consent of parties.   The proofs establish the fact that the plaintiffs are the owners of the patent-right as claimed.   The defendant, in his answer, admits the infringement alleged, but insists by way of defense that he was a lunatic at the time of the tortious acts complained of, and had been so ascertained and declared by the proper inquisition of a jury.   Since this finding, and before the commencement of this suit, another jury, upon inquisition, have found that he had become sane and was capable of attending to his business affairs.

As a general rule, a person *non compos mentis* is not responsible for crime, and a jury must determine the question whether the party accused had a sufficient degree of reason to know that the act which he did was wrong.   There must be a criminal intent in doing an act in order to constitute crime, and a want of reason is generally evidence of a want of intent.   The law presumes every man to be responsible for his acts until the contrary is shown to the satisfaction of a jury.   As a general rule, a person of unsound mind cannot make a binding contract, as capacity for consent is an essential element in such a transaction.   In some instances—like in the case of infancy—the question whether the contract of a lunatic is valid, void, or voidable, depends upon the purpose and object of the contract, and the circumstances attending the transaction.   A lunatic is often civilly liable for his torts, as he is not entirely exempt from the general doctrine of the law, that, whenever one person receives an injury directly from the voluntary act of another, that is a trespass, although there was no design to injure.   This general rule has been modified by exceptions made by the constructions of the courts in the case of lunacy, and upon this subject there is some conflict of decisions.   The current of authority seems to establish the doctrine that a lunatic is not liable for injuries to the sensibilities and reputation of a person, as in such cases malice is an essential ingredient to the tort; as libel, slander,

malicious prosecution, and malicious arrest under regular process. A person *non compos mentis* is regarded by the law as incapable of a wicked intention to do such injuries. There are other cases of injuries to the person by a lunatic about which there is some conflict of decision, as assaults, batteries, false imprisonment, etc., in which a wrongful intent or culpable negligence are ingredients. In batteries there must always be an intent, express or implied, to do the injury; and legal malice is always presumed when a wrongful act is done intentionally, without just cause or excuse. Express malice is some manifestation of ill-will to a person, or an evil design or corrupt motive in doing an act which is injurious to another.

In this second class of torts many plausible arguments may be used on both sides in sustaining opposing views. These torts to the person are embraced in the legal maxim, *"actio personalis moritur cum persona."* They are torts committed by force, and are usually prompted by sudden passion or vindictive feelings, and in many cases large punitive damages are properly assessed by a jury against the tort-feasors. As the wrongful intent and motive of the wrong-doer are the usual and substantial grievance complained of, and punitive damages are generally assessed, I am of opinion that actions for such torts should not be sustained against lunatics, as they are incapable, from want of reason, of such intent and motive, unless substantial damages, capable of ready estimation, have been suffered. In no case can vindictive damages be assessed against a person *non compos mentis.* This liberality of the law to this unfortunate class of persons can work no serious injury to society, as they can be legally confined when considered dangerous; and the disposition, power, and right of self-defense will generally be sufficient to insure the personal safety and security of the citizen against the unreasoning and motiveless action of an imbecile.

Injuries to property, corporeal and incorporeal, constitute a third class of torts, in which it is generally conceded that lunatics are responsible for compensatory damages to the extent of the actual injury sustained. Some of these injuries are often prompted by malice towards the owner, or are done in a spirit of wantonness, cruelty, and revenge, as in the case of malicious mischief at the common law, and malicious injuries to property defined by statute. In such cases a sane person is liable to indictment, and also to an action for the civil injury, and punitive damages will generally be recovered. A lunatic can only be made liable for compensatory damages. In civil actions for violation and encroachment upon established rights of property, the law does not so much regard the intent of the wrong-doer as the loss and damage of the person injured.

In this case the defendant is charged with the infringement of an incorporeal right conferred by law upon the plaintiffs. A patent-right is the exclusive liberty conferred by letters patent from the sovereign on an inventor or his alienee of making and vending ar-

ticles according to his invention. A patent-right is regarded as personal property, and may be assigned; and, if it be infringed, the inventor or his alienee has a remedy at law by action of trespass on the case for damages, and a remedy in equity to prevent the continuance of the wrong by injunction. Ad. Eq. 212. In such cases the statutes of the United States have conferred original and concurrent jurisdiction upon courts of equity, and they may determine, without the assistance of a court of law, the legal right of the plaintiff and the infringement by the defendant; and may ascertain the amount of loss and damage by taking an account of the defendant's property, and afford a complete remedy for the wrong committed, and prevent its continuance by injunction.

As the proof in this case establishes the legal right of the plaintiffs, and the infringement is admitted by the defendant, the plaintiffs are entitled to a perpetual injunction, and to an account to ascertain the profits derived by the defendant from his infringement.

The counsel of the defendant insist that the order of reference should direct the master to ascertain and report the amount of expenses incurred in the maintenance of the defendant during the period of his lunacy subsequent to the infringement, and that the same may be allowed by the master in estimating the amount of profits received. It is true, as stated by counsel, that courts of equity, as representatives of the sovereign, have, within the local limits of their jurisdiction, a general superintendence and care over lunatics and their estates, and will not allow creditors to have satisfaction of their debts out of such estates until provision is made for reserving a sufficient amount for the comfortable maintenance of a lunatic, and his wife and minor children. *Adams* v. *Thomas*, 81 N. C. 296, and cases cited. This superintendence and care, however, is only exercised during the period of mental incapacity, when the unfortunate lunatic is unable to provide maintenance for himself and family. After the restoration of such person to a condition of sanity the court cannot properly allow the expenses of past maintenance, although his incapacity for self-support, and the incidental expenses necessarily incurred during the period of lunacy, had greatly diminished his estate, and the damages claimed were caused by him while he was a lunatic.

The counsel of defendant object to costs being allowed in the preliminary decree granting a perpetual injunction, and directing a reference to the master to take and state an account of the profits received by the defendant by reason of his admitted infringements. It is true, as insisted by the counsel, that this is not a final decree, as the cause must be heard for further directions on the report of the master; and the hearing of the cause on further directions is generally the occasion for determining the question of costs. *Humiston* v. *Stainthorp*, 2 Wall. 106. Courts of equity, however, having a large

discretion in matters of costs, frequently give costs in intermediate stages of a cause, without waiting for the final decree. Ad. Eq. 389; 2 Daniell, Ch. Pr. 1457. This discretion can be properly exercised in giving to the prevailing party the incidental costs which have arisen during the progress of a cause about a matter completely disposed of by the court, and not necessary to be considered on further directions. In this case, the facts appearing in the evidence and the pleadings being deeemed sufficient by the court for granting a perpetual injunction, which disposes of that part of the relief asked for in the bill, I am of the opinion that the costs incident to that proceeding should be allowed the plaintiff in the decree for a perpetual injunction.

Let a decree be drawn in conformity to this opinion.